Our next case is number 16-1817 in Re Chudik. Mr. Becks. Good morning and may it please the court. I think the key things to remember about this case are if you have to change what the reference shows, change its shape and make a new something of it. That's not an anticipation and Topliff said so. Well, if I understand your theory correctly, that these claims are not describing functions, they're describing structure and that a claim isn't anticipated if the structure has to be rearranged in the prior art reference. Isn't that basically what we're talking about here? That's basically it, Your Honor, but I would add to that there's no evidence in the case that the prior art device could be changed. There's no suggestion anywhere. There has to be some kind of evidentiary basis to give the examiner and board reason to suggest a change. What I'm doing is I'm talking about Topliff, I'm also talking about Schreiber. I hope I've answered your question. Yes, this is my basic... Schreiber doesn't have anything to do with this because it describes structure rather than function. That's what I see, Your Honor. And it's your position that you're talking about structure because of the language in the claim has a structural requirement, it's adapted to, it's structural? I'm looking at claim one, Your Honor. The shell has a... and I'm going to answer your question about structure. I apologize. I used the wrong words. But what I meant was I think it's your position that the language arranged to should be interpreted to have a structural requirement. Yes. Yes, that is our position. In particular, the protruding surface is on the first side of the shell. It's arranged to engage the surface of a cavity. And that cavity is between, it's structurally between peripheral glenoid surfaces. And then the next step in the claim is the next element for the shell. The shell is a flat surface on the first side adjacent to protruding surface arranged to engage the peripheral glenoid surfaces adjacent to cavity. In the reference, there are no peripheral glenoid surfaces adjacent to cavity. The reference shows a complete cavity. Why is it arranged? We look at the word arranged as capable of. Pardon me, Your Honor. What was your question? Why would we not look at the word arranged, arranged to engage as meaning capable of engaging? Yes, you can. It is. That's what the claim says. And it has to do with engaging specific things. The surface of a cavity formed in a glenoid between, between peripheral glenoid surfaces. And then the claim goes on to talk where those peripheral surfaces are. They're adjacent to the cavity. Capable of, you can read that in the claim. But again, what I say is the reference isn't capable of doing that. You have to change the reference in order to make it fit that description. Now we have some cases where we've talked about what does different language that sounds like arranged to, what does it mean? Things like adapted to, designed to. And in those cases, we've said that it depends on what the specification says. Sometimes it can mean something like capable of. And sometimes it can mean that you actually have to meet the limitation. It's not enough that it's just capable of perhaps doing that. Do you have a view on whether, just assuming that we're going to go ahead and consider, I understand you have an alternative argument that even if the claim is capable of, the PTO hasn't met its burden here. But do you also argue that the language in your claim should be read as a structural limitation? It should be, yes. If I could, I want to answer your question here. If you could look in the Joint Appendix at Appendix Phase 151. Judge Dyke is still looking. We're there. Look at Figure 21, which is in the upper left-hand corner of that page. That's a reamer. You see the protruding face on the reamer? And outside is a peripheral surface so that that will aggressively form flat surfaces around the edges of glenoid. And that reamer is applied as shown in Figure 22. And what we come up with is a glenoid implant shown in Figure 33, which has a protruding surface, 119, and flat surfaces, 121. Around the outside edge, it's called a brim. And those are the specific, that specific arrangement is not true in the reference. That's, I think, the answer to your question here. And, you know, I don't think I have anything more to say. I'm here to tell you that the reference has to be changed. And Topless says you can't change it and get an anticipation. And if you look for any kind of evidence that the examiner could change it, suggest that he change it, or the board says, well, look, if you stir up this cavity in any shape so that the protruding surface will fit into it, that only deals with the cavity. That doesn't deal with the peripheral surfaces at all. I'll answer any questions that you have. OK, thank you, Mr. Kelly. Good morning, Your Honors. May it please the Court. There can be a little. Why isn't he right that this is really a structure claim? It's to the extent that even if we assume it's a structural claim, and as Judge Stoll suggested, in that case, then you look to the specification to see what the structures are. As the board correctly found, the specification teaches that the glenoid will be resected to any shape that you want, dome, triangle, pyramid, cube. To make that happen, you have to structurally change the reference. So now you have to come up with a totally different device. I'm sorry, which device are you referring to? To make the reference device fit, it's got to be altered. No, the device doesn't have to be altered. The glenoid surface has to be altered. And that's true of any implant surgery. The defined structure has to be rearranged, so it's different, right? No. In butans, don't you have to flip it around? Oh, in the case of butans, yes. In the case of butans, you do. In the case of Rombart, no, you don't flip it around. You have to remove something. No. You would have to remove, wouldn't you have to remove element, I think it's 24A? 27A. Oh, 27A. No, Your Honor. There is that shell 27B can be cemented into the glenoid directly without the need for 27A. How do you know that? Because you didn't provide translations of this French patent, so I can't read French. Well, there is a translation of Rambert's abstract at pages 218 and 219. And if you look at page 219, I'm sorry, 218, and it's the 1, 2, 3, 4, 5, 6, 7th paragraph down. Is it 218, 7th paragraph down? Yes. 1, 2, 3, 4, 5, 6, 7. To facilitate the implementation of the humeral component and allow it to be fixed without resort to cement, they've added a screw, and they've added this other piece. As was discussed in our brief, there were two conventional ways of securing these glenoid implants to the glenoid surface. One is via cement, and one is via screws. The claims in this case are open to either method of attachment. The specification discusses both of these conventional methods. Did the board rely on this language here in its decision? The board did not rely on this particular language. I'm sorry to interrupt you, but did they rely on anything other than the figures in the prior reference? No, they relied on the language in the specification. If you look to the board's decision at... When you say the specification, are you referring to Trudick's specification? Yes, I'm referring to Trudick's specification. Okay, I meant in the prior reference. Did it rely on any of this text in the abstract that you're showing us now? No, it did not, Your Honor, but I believe I was responding to... You were asking the question of how could you attach it without 27A. I think what I said was it seems from the figure they're relying on that you'd have to remove 27B. Yeah, because it says a protruding surface and a flat surface that are engaging with the glenoid surface. In the prior art, they're not engaging with the glenoid surface. They're engaging with what's labeled 27A here. That's the problem. Respectfully, Your Honor, in this court's decision, all that's required of the prior art is that it be capable or able to perform the recited function. The prior art doesn't have to show the actual performance of that function. But it's only capable of doing this if you remove 27A. If you alter the... Well, the claims don't require direct contact. The claims recite... And this is something the examiner pointed out. The claims recite the word comprising. So in the first instance, there's nothing about the claims that forbid 27B engaging the glenoid surface using shell 27A that the claims don't discount that. And there's nothing in the claims that says you need direct attachment either. So by use of the word comprising and by failing to amend the claims to say direct contact, there's nothing about the claims themselves that prohibit this extra piece. You don't think the language of protruding surface arranged to engage the surface of a glenoid cavity, that doesn't require direct contact? I mean, it does refer to the surface. It doesn't just say arranged to engage a glenoid cavity. And I think you're reading arranged to as being capable of, right? Correct. And that is the basis for the board's decision and one of the rationales put forth by the examiner. And I believe that is a correct rationale. Just because the prior art doesn't use it this way, and this is the same argument for the Bhutan's reference, just because the prior art doesn't use it this way, the prior art has this structure that can be directly inserted into the glenoid. One of the problems I'm having is you say it can be, but I see no justification for that in the record. Nothing that suggests that it would be used in that way. You say it can be, it feels unsupported, but also the arranged to construction seems overly broad, not reasonable, I would say, in light of the specification, given the precedent that we have on what arranged to should be interpreted to mean and that it should, I guess, like arranged to adapted to, that it means there's an actual structural limitation in many cases in light of the specification. How do you respond to the claim construction point? My response to that claim construction point is that's an intended use. That's just what the examiner said, and that's the case in Schreiber. In the case in Schreiber, you had an oil can that this court said was structurally identical. Why in this case, in light of this specification with this claim language, should we interpret arranged to to not be structural and just be functional or capable of? Why should we do that? That's my question. I don't think Schreiber tells you how to interpret this claim language. That much I would agree with, Your Honor. What happens here procedurally, from a procedural posture, the board said, we have a reason to believe that this is structurally able to directly contact the surface because your specification, the structures that are correlated to that function, the structures your specification correlates to that function, those structures, you said, any shape can pretty much be arranged to engage the glenoid. The specification is very clear about that. The specification says it can be affixed, if you are reading it, the claims require a fix to the glenoid in two ways, either by screws or by cement. That should be enough to shift the burden to the applicant to come forward and say, no, here are the structural reasons. Either here are the structural reasons why the prior can't do that, or here are the structures. Let me interrupt you for a minute. You're relying on those passages in the specification to explain, because the specification says you can have many different shapes, that means the word arranged to should be limited to capable of and not have a structural requirement. I'm using the words arranged to and capable synonymously because the specification literally says that the, quite literally I guess I should say, says that the glenoid can be resected to match the profile of any, that it can be resected to match the profile of any shell. In that case, the shell having this shape or a pyramidal shape or a dome shape, could engage the glenoid in the manner that's outlined in the specification. But RAMPART doesn't teach that, right? It doesn't disclose that. Shell, in the board's opinion, I think it's the correct opinion, the structures disclosed in RAMPART are capable, are able to engage the glenoid surface. It's true that RAMPART doesn't disclose an alternative. Admittedly. Admittedly, RAMPART does not disclose that in the alternative, but the claims here, again, do not recite the word, they recite the word comprising, they do not say direct contact. So 27A could be there, and even if 27A were removed, it would still match the resected profile of the glenoid, and it could still be cemented or screwed into place. But if you remove 27A, that changes the structure of RAMPART in a fundamental way to where now we have a whole different reference. Well, my response to that is the entirety of RAMPART's implant is not being cited against these claims. Only 27B is being cited against these claims. But 27B won't work unless you remove 27A. Well, it's the board's position, and I believe the correct position, that it would. So the board does rely on removing 27A? The board said yes. The board said that this is the reason that we find that it is so arranged. The examiner gave both the comprising and the same rationale for directly contacting the glenoid. Now, we've said in Ray Wells, an earlier device which must be distorted from its obvious design cannot be in anticipation. The earlier device in this case, again, is 27B, not the entire RAMPART implant. And 27B, the board found, as a factual matter, does not need to be distorted to directly contact the glenoid. And in not just this implant, not in the claimed implant, but in all implants, the glenoid surface is resected to match the surface of the implant that's going in there. This is very common. Look at figure 2 and look at items 28 and 21. It's 28. It's those screws. Do you see those screws? One moment, please, Your Honor. I'm unclear. I didn't hear the figure number. Figure 2 on RAMPART? RAMPART's figure 2, yes. Do you see those screws, 28? If you're going to rely only on 27B in order to engage the surface of the cavity, then those screws have to be facing another way. I understand that, but there is the possibility of cement. Why isn't that distorting the reference? It doesn't have to be screwed in. It can be cemented in. The claims are not limited to any particular attachment mechanism. But RAMPART uses screws, not cement. But the screws are not part of what's cited against. It's only shell 27B that's being cited against these claims. And the claims don't require screws. In fact, when the claims were originally filed, if you look at A71 of the specification, original Claim 1 comprised an ingrowth shell, a wear-resistant surface removably attached to the shell, and at least one fixation screw. The applicant here removed the screw limitation, leaving it open to either of the conventional methods of attachment, which would be cement or screws. The applicant also removed the limitation that this had to be a modular implant and left open that it could be a unitary or modular component. In fact, if you look throughout this case, we started out with narrow claims, and the claims just got broader and broader and broader as the case went by, as each new prior reference was cited. And what has happened here is that Chudok now has claims that are so broad that recite so little function. It feels like you're relying on the specification of Chudok to excuse why it is, you know, to modify RAMPART. That doesn't seem like a proper way for the PTO to analyze claims. Respectfully, Your Honor, again, it is not our opinion that RAMPART needs to be modified, A. B, we're not relying on their specification for a teaching of how things should work in this particular instance. We're just noting that this specification, like RAMPART, acknowledges that these sorts of implants can be, first of all, are placed on reamed surfaces that match whatever the implant is going to be, and that they can be screwed into place or they can be cemented into place. And that's just this admitted prior art, basically, about what is de rigueur in this field. Well, you're talking about admitted prior art, but that was not relied on below. What was relied on below here was a 102 anticipation rejection in view of RAMPART and a 102 anticipation rejection in view of Bhutan. So I don't think that you can rely on admitted prior art to try to modify those references, right? Again, in the case of cement, there's no modification. You make a matching profile in the glenoid. You pop it in there with cement. That's what you do. There's no modification of Shell 27B. And that is our position, that Shell 27B is not modified. Okay. Thank you, Ms. Kelley. Thank you. Anything more, Mr. Baggs? I think I'll observe that counsel's argument deals with cavity, and we haven't heard anything about contacting the peripheral flat surfaces. When you say this matches the glenoid surfaces, you include both surfaces. If you say this just matches the glenoid surface, that's a general term, and we haven't heard anything about any evidence whatsoever to deal with those flat surfaces around the brim of the hat. I agree with you, Your Honor, that when you take away that coupler, you're changing the whole structure of the reference. And counsel mentioned Bhutan's reference in connection with Claim 40. All you need to do is look at that reference. The whole ball of the glenoid implant faces away from the glenoid. It never gets back to anywhere close to the glenoid cavity. You're going to have to change that reference pretty substantially and topless if you can. I'm open to questions. Okay. Thank you, Mr. Baggs. I guess you might as well stay up there because our next case is 16-1902. Again, anyway, shoot it.